UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 09-12-JBC

GRETA FAYE BURDETTE, PLAINTIFF,

V. MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION, DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment. R. 11, 12. The court will deny the plaintiff's motion (R. 11) and grant the defendant's motion (R. 12).

I. Overview of the Process

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See id.* Rather, the

ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

In determining disability, the ALJ conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); 20 C.F.R. § 404.1520.

## II. The ALJ's Determination

At the time of the alleged onset of Burdette's disability, she was thirty-three years of age. AR 69. Burdette has past relevant work experience as a janitor, housekeeper, and fast food worker (AR 143) and a high school education, although she took special education courses (AR 733). She applied for supplemental security income ("SSI") (AR 69-71) and disability insurance benefits ("DIB") (AR 72-73) in October of 2007. Burdette alleges disability due to several impairments

2

including hearing loss, seizures, dyslexia, low back pain, hip pain, leg pain, diabetes, depression, anxiety, and asthma. R. 11 at 2; AR 733-65. Her claims were initially denied on December 17, 2007 (AR 52-54), and again upon reconsideration on February 25, 2008 (AR 49-51). After a hearing on August 12, 2008 (AR 724-772), Administrative Law Judge ("ALJ") Don Paris determined that Burdette did not suffer from a disability as defined by the Social Security Act (AR 11-23).

At Step 1, the ALJ found that Burdette had not engaged in substantial gainful activity since the alleged onset date, October 17, 2007. AR 16. At Step 2, the ALJ found that Burdette suffered from the following combination of impairments considered "severe" under 20 CFR 404.1520(c): developmental reading disorder/dyslexia, borderline intellectual functioning, adjustment disorder with traits of anxiety, seizure disorder, moderately severe sensorineural hearing loss on left, and back pain. AR 16-17. The ALJ then determined at Step 3 that Burdette's impairments did not meet or medically equal a listing in the Listing of Impairments in 20 CRF § 404, Subpart P, Appendix 1. AR 18-19. At Step 4, the ALJ determined that Burdette was unable to perform any past relevant work. AR 21. Finally, the ALJ determined at Step 5 that, due to Burdette's age, education level, work experience, and residual functioning capacity ("RFC"), jobs exist in significant numbers in the national economy that she can perform. AR 21.

Thus, the ALJ denied Burdette's claims for SSI and DIB on November 5,

2008. AR 11-13. Burdette appealed the decision, but the Appeals Council denied her request for review on December 8, 2008. AR 6-8. Following the denial, Burdette filed this action.

**III.     Legal Analysis**

Burdette challenges the ALJ's decision on two grounds. First, she argues that the Commissioner erred in evaluating her testimony regarding her pain symptoms and limitations. R. 11 at 3-4. Second, Burdette alleges that the ALJ improperly substituted his own opinion for that of the physicians of record. *Id.* This court will grant summary judgment for the Commissioner because substantial evidence supports the Commissioner's denial of benefits.

    A.    The ALJ did not err in evaluating Burdette's testimony regarding her pain symptoms and limitations.

The ALJ considered Burdette's complaints of all her symptoms, but adequately explained why her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" her RFC.[1] AR 20. The ALJ may and properly did assess Burdette's credibility, a decision to which this court accords great weight. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations

---

[1] Although Burdette asserts that the ALJ erred in his analysis, she has not referred the court to any medical evidence in the record that would support a different conclusion. *See* R. 11 at 4 (stating generally that "[c]laimant's medical records, length of treatment, and testimony clearly establish objective medical evidence that support's Claimant's allegations of disability").

4

omitted). While it is Burdette's burden to establish that she is disabled, *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993), her own testimony is but one of many pieces of evidence that an ALJ must consider in making a disability decision. 42 U.S.C. § 423(d)(5)(A) ("[A]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . there must be medical signs and findings."). The ALJ provided a paragraph-long explanation of why he found her complaints only partially credible.[2] AR 20. *See* Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34,438-01 (1996) ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'").

As a first step in evaluating Burdette's assertions of disabling pain, this court agrees with the ALJ that there is objective medical evidence of her underlying medical conditions. AR 20. *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Burdette has diagnosed hearing loss in her left ear, back pain, asthma, diabetes, seizure disorder, developmental reading disorder, borderline intellectual functioning, and adjustment disorder.

---

[2]The ALJ concluded that "[f]rom a mental perspective, she is not in counseling or treatment and has no problem dealing with others" (AR 20), despite Burdette's testimony that she gets "real nervous and scared" around groups of people (AR 752). But because Burdette further testified that she regularly attends church, visits friends, and shops at flea markets (AR 758, 762-63), the ALJ did not err in concluding that Burdette's complaints regarding her mental impairments and social anxiety were not fully credible.

5

Second, the court must examine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Duncan*, 801 F.2d at 853. The ALJ found that it did not, which is supported by substantial evidence.

First, there is not objective medical evidence which confirms the severity of her alleged pain. None of Burdette's treating physicians diagnosed her pain as severe or disabling, and even in the months after she "pulled" her back at work, Burdette did not complain of back pain to her treating physician. AR 410-21.

Second, Burdette's diagnosed conditions are not so severe that they can reasonably be expected to produce allegedly disabling pain. While it is undisputed that Burdette has a history of seizures, numerous CT scans of Burdette's head and brain in 2006 and 2007 were within normal limits. AR 312, 316, 377, 396, 524. Burdette admitted that she had not experienced a seizure for almost a year before the hearing (AR 733), prompting the ALJ to observe that Burdette's seizure disorder appears well-controlled with medication (AR 754-55). Her asthma is similarly regulated with inhalers and medication. AR 754-55. Additionally, she was able to hear and understand the ALJ at her disability hearing with her hearing aid "all the way up." AR 726-29.

Moreover, there is no evidence to indicate that Burdette's back problems, which she manages with Tylenol and a heating pad (AR 744, 746), would produce

disabling pain.  One radiology report evidenced mild degenerative changes of Burdette's hip joints, but nothing else remarkable.  AR 389.  Numerous MRIs performed in 2007 were negative (AR 317 (normal apart from some straightening of lordosis), 318, 407, 408, 502, 503) and no physician has prescribed medication or recommended that Burdette have surgery to alleviate her back pain.  Physical capacity evaluations also corroborate the ALJ's assessment that she can do light work.  AR 583-590, 624-31.

Given the lack of objective medical evidence to support the extent of Burdette's alleged limitations, the ALJ considered other factors relevant to Burdette's symptoms and how they would limit her capacity for work.  20 C.F.R. § 404.1529(c).  Burdette also testified about her disabling mental impairments, especially her depression and anxiety, but admitted that she hadn't been to treatment for her either condition for more than a year-and-a-half.  AR 753.  Consulting physician Dr. Stuart Cooke, who evaluated Burdette in late 2007, rated her global assessment of functioning (GAF) at a 60.  AR 578.  And although she suffers from dyslexia, she can read simple sentences and notes with the aid of a mirror.  AR 734-45.  Burdette takes care of her own personal needs, regularly attends church, cares for and walks her dogs, and drives her husband to and from work each day.  AR 732-33, 757-63.  She is able to do light chores around the house; walks some for exercise; goes grocery shopping; and visits friends, family, flea markets, and yard sales, although sometimes she uses a cane or wheelchair.

AR 744-45, 747, 760-62.

Ultimately, the ALJ found that there was "insufficient evidence to support symptoms to the extent alleged," and arrived at Burdette's RFC for a limited range of light work, with specific restrictions. AR 19-21. Based on substantial evidence in the record and hypothetical questions to a vocational expert who identified a significant number of jobs that Burdette could perform with her particular physical and mental limitations, the ALJ properly determined that Burdette was not disabled within the meaning of the Social Security Act. AR 21-22, 767-70.

B. The ALJ did not improperly substitute his opinion for that of the physicians of record.

Burdette complains that the ALJ improperly substituted his own opinion for that of the physicians of record, but she specifically alleges only that the ALJ failed to adequately consider the opinion of Dr. P.D. Patel. R. 11 at 4. As the ALJ pointed out, Dr. Patel performed a neuropsychiatric consultation of Burdette at her attorney's request, but did not treat her. AR 714-723. Accordingly, the ALJ was not required to give special deference to, Dr. Patel's opinion of Burdette's disability and corresponding limitations or justify the weight he gave those opinions. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Even so, the ALJ explained that he considered, but accorded little probative weight to, Dr. Patel's report because the physical limitations Dr. Patel imposed were not supported by any physical evaluation or examination, and because there was no evidence that he reviewed any prior medical documentation of Burdette's physical condition. AR 21.

8

Moreover, Dr. Patel's mental evaluation was not supported by objective medical evidence in the record. AR 18. Dr. Patel assigned Burdette a GAF of 25, which indicates that her "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *See* American Psychiatric Association, Axis V: Global Assessment of Functioning, tendered at R. 12, Exh. 1. To the contrary, at her hearing, Burdette detailed her daily activities, which include caring for her dogs, shopping, and attending church. Burdette's employment history, which includes seven consistent years of work at a fast food restaurant and two full-time janitorial positions, is also inconsistent with a GAF of 25. Dr. Patel's mental evaluation was also dramatically different from Dr. Cooke's, who assigned Burdette a GAF of 60. AR 578.

Finally, Burdette has not shown that the ALJ improperly substituted his own opinion. The assessment of Burdette's RFC and ultimate disability determination are administrative findings expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 404.1546; *Ford v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 194, 198 (6th Cir. 2004). Indeed, "the final responsibility for deciding certain issues such as these is reserved to the Commissioner." Social Security Ruling (SSR) 96-5p 61 Fed. Reg. 34,471-01 (1996). As discussed above, the record supports a finding that Burdette's ability to work is somewhat impaired, but it does not

suggest that she is totally disabled, despite Dr. Patel's significant limitations, so the ALJ did not err in rejecting Dr. Patel's opinion. Because the Commissioner's findings were supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g) (2009); *Wright v. Massanari*, 321 F3d 611, 614 (6th Cir. 2003).

**IV.  Conclusion**

Accordingly, **IT IS ORDERED** that Burdette's motion for summary judgment (R. 11) is **DENIED** and the Commissioner's motion for summary judgment (R. 12) is **GRANTED.**  A separate order will enter accordingly.

**Signed on  May 19, 2010**

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY